# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| **In Re:**<br>**Matthew Deloss Rodenbough**<br>**and Jessie Jean Rodenbough,**<br><br>**Debtors.** | **Bankruptcy Case**<br>**No. 17-40658-JDP** |

### MEMORANDUM OF DECISION

**Appearances:**

    Thomas Daniel Smith, SERVICE & SPINNER, Pocatello, Idaho, Attorney for R. Sam Hopkins, Chapter 7 Trustee.

    Ryan E. Farnsworth, Idaho Falls, Idaho, Attorney for Debtors.

### *Introduction*

This decision explores the sometimes complicated question of which statutory exemption scheme is available to "mobile" debtors in a bankruptcy case.

MEMORANDUM OF DECISION – 1

Chapter 7[1] trustee R. Sam Hopkins ("Trustee") objected to the exemptions claimed by debtors Matthew and Jessie Rodenbough ("Debtors"). Dkt. No. 26. Debtors responded. Dkt. No. 45. After an evidentiary hearing on November 14, 2017, the parties filed supplemental briefs, Dkt. Nos. 66, 67, and 69, and the issues were taken under advisement. The Court has considered the briefs, testimony and evidence, and applicable law. This Memorandum sets forth the Court's findings, conclusions, and reasons for its decision concerning this dispute. Fed. R. Bankr. P. 7052; 9014.

*Facts*

A brief summary of the evidence established the following material facts:

On September 18, 2010, Debtors married. About that time,[2] they

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

[2] The evidence is conflicting on this point. There was testimony that Jessie moved to North Dakota in August 2010, to join Matthew who was already living there, but there was other testimony that the couple lived in Idaho for a

MEMORANDUM OF DECISION – 2

moved to Williston, North Dakota. In December 2010, Debtors founded Rodenbough Trucking and Excavation. They had one truck which they operated, for the most part, in North Dakota.

Debtors kept some of their things at Jessie's[3] parents' house in Rigby, Idaho, but there was a fire at that residence, so they moved those belongings across the street to her grandmother's home at 139 North 3600 East. Although Debtors never actually resided there, in their Statement of Financial Affairs ("SOFA") filed in the bankruptcy case, they listed that address as their own from 2010 through October of 2013. Ex. 100. In addition, they listed an address in Douglas, North Dakota from October 2013 - January 2015; an address on Lake Windemere Street in Las Vegas, Nevada from January 2015 - April 2016; and a different Las Vegas address, Espana Court, from April 2016 - March 2017. *Id*.

---

short time after getting married in September 2010. The specifics are not important; there is agreement on the material point, that the couple moved to North Dakota in 2010.

[3] Any references to Debtors by first name are for clarity; no disrespect is intended.

MEMORANDUM OF DECISION – 3

Based upon the Court's review, the evidence shows that Debtors resided exclusively in North Dakota from about the time of their marriage in September 2010 until some time in 2014. In addition to testimony, for example, the evidence shows Debtors signed a lease on a house in the Rice Lake subdivision in Ward County, North Dakota, beginning September 1, 2012. Ex. 102. The term of this lease was three years, however, they apparently moved to Minot, North Dakota, executing another lease on December 29, 2014, for a one-year term beginning on January 1, 2015. Ex. 102. Jessie testified that this last move occurred because the Rice Lake property flooded and was condemned.

Debtors continued to live and work mainly in North Dakota in 2014, but then began spending time in Las Vegas, during which time they considered relocating to Nevada permanently. Debtors signed a lease on the home on Lake Windemere Street in Las Vegas beginning May 1, 2014. Ex. 102. That lease was renewed from May 1, 2015 through April 30, 2016. *Id*. Following the conclusion of that lease, Debtors signed a lease for the Espana Court home in Las Vegas, beginning April 1, 2016. Ex. 102.

MEMORANDUM OF DECISION – 4

In February, 2016, Debtors took up residence full-time in Nevada. There they operated a high performance auto aftermarket shop. While they moved most of their things to Nevada, there were some items that would not fit in their Las Vegas residence, including some vehicles and business assets from the trucking and excavation business, which items they moved back to Idaho. Jessie explained that, from January 2015 through March 2017, neither of the Debtors lived in Idaho, although they would visit family there as often as they could. During this period, Debtors utilized the Rigby address on important documents, such as vehicle registrations, tax returns, and Matthew's commercial driver's license, because they moved so frequently, they were concerned about important papers getting lost. They also purchased vehicles in Idaho where they had established relationships with lenders and dealerships which, they believed, afforded them better prices and financing. However, they also used addresses in other states for the registrations for those vehicles. Indeed, including both business and personal vehicles, Jessie testified that they registered vehicles in North Dakota, Nevada, and Idaho.

MEMORANDUM OF DECISION – 5

Matthew holds a commercial driver's license issued by the state of Idaho which he has maintained since Debtors were married. Jessie held a North Dakota driver's license in 2014 and 2015, Ex. 101, but obtained a Nevada driver's license some time in 2016 when Debtors were living there. The record is unclear if she obtained an Idaho driver's license upon moving back.

Ultimately, their Nevada business failed, and in March 2017, Debtors returned to Idaho where they resided, and continue to reside, with Jessie's parents in Rigby. On July 24, 2017, Debtors filed their chapter 7 bankruptcy petition, listing their address as Rigby, Idaho. Dkt. No. 1. On their schedule C, Debtors claimed exemptions for their property based upon the federal exemptions under § 522 of the Bankruptcy Code, rather than based on any state law. *Id*. Trustee objected, arguing that Debtors are not entitled to claim the federal exemptions.

*Analysis and Disposition*

A.     **The Bankruptcy Code's Exemption Scheme**

Trustee argues that Debtors may not claim the federal exemptions

MEMORANDUM OF DECISION – 6

under § 522 because they were Idaho residents at relevant times, and therefore, Debtors were limited to the exemptions provided by Idaho law. Debtors disagree, arguing that the Code allows them to claim federal exemptions because they lived in multiple states during the applicable periods.

In this context, as the objecting party, Trustee bears the burden of showing that Debtors' claim of exemption is improper.  Rule 4003(c); *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999); *Hopkins v. Cerchione (In re Cerchione)*, 414 B.R. 540, 548-49 (9th Cir. BAP 2009); *In re Capps*, 438 B.R. 668, 671 (Bankr. D. Idaho 2010).

In most instances, debtors residing in this State may only claim Idaho exemptions when they file for bankruptcy relief.  Indeed, in §522(b)(3), the Code permits a state to "opt out" of the federal exemption scheme in favor of its own; Idaho chose to do so.  Idaho Code § 11-609. However, where debtors have lived in different states prior to filing for bankruptcy relief, the Code sets forth a somewhat complicated approach to determining what exemptions they may claim.  More precisely, the

MEMORANDUM OF DECISION – 7

Code provides that debtors may exempt:

> [A]ny property that is exempt under Federal law, other than subsection (d) of this section, or [under] State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place[.]

§ 522(b)(3)(A). In simpler terms, to determine which exemption scheme applies, the parties and Court must first identify a debtor's domicile during the 730 days preceding the filing of the petition. If the debtor has been domiciled in the same State for those 730 days, then that State's exemption laws apply. If, on the other hand, the debtor was domiciled in more than one State during the 730-day period, then the Court must identify where the debtor was domiciled during the 180 days preceding the 730-day period, or the longer portion of that 180 days, and apply the exemption laws of that State in debtor's bankruptcy case.

A domicile is established when a person is "physically present in a

MEMORANDUM OF DECISION – 8

location with an intent to remain there." *In re Capps*, 438 B.R. at 671 (citing *In re Halpin*, 94 I.B.C.R. 197, 197 (Bankr. D. Idaho 1994) (quoting *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 46 (1989))). Of course, a debtor's residence may be different from his or her domicile because "[r]esidence, by contrast, may refer to living in a particular locality without the intent to make it a fixed and permanent home." *In re Capps*, 438 B.R. at 674 (quoting *In re Halpin*, 94 I.B.C.R. at 197.)

### B. Debtors' Exemptions

Applying these rules to the facts of this case yields a result at odds with the positions taken by either Debtors or Trustee.

Debtors filed a bankruptcy petition on July 24, 2017. Thus, under the 730-day rule, the Court must initially determine if Debtors were domiciled in a single state between July 25, 2015 and July 23, 2017.[4] They were not. The evidence indicates that Debtors had domiciles in North Dakota, Nevada, and eventually, Idaho, during this period of time.

---

[4] In counting the days, the Court notes that 2016 was a leap year, thus February had 29 days.

MEMORANDUM OF DECISION – 9

As a result of this conclusion, the Court next focuses on the preceding 180 days preceding the 730 days, in this case, January 26, 2015 to July 24, 2015. During that period, Jessie testified that Debtors lived mostly in North Dakota – specifically in Minot. While Debtors leased property in Nevada beginning in 2014, they did not establish their domicile there until February 2016.

Given the meaning of the term, it is clear that Debtors were not domiciled in Idaho during the relevant time periods utilized in the Code to determine exemptions because they came to Idaho only for the occasional visits with family. That Debtors, for convenience, used the Rigby address as their mailing address for important documents is not sufficient to establish a domicile. Accordingly, during the 180-day period discussed in the Code, only North Dakota and Nevada were possible domiciles for Debtors.

Debtors initially leased property in North Dakota beginning September 1, 2012, for a term of three years. Due to a flood, they then moved to Minot under another lease beginning on January 1, 2015. Ex.

MEMORANDUM OF DECISION – 10

102. However, Debtors also signed a lease on a home on Lake Windemere Street in Las Vegas for a term beginning on May 1, 2014; they renewed that lease for a one year period beginning on May 1, 2015. As can be seen, then, Debtors held leases on residences in two different states during the 180-day period.

Other conflicting evidence bears on Debtors' domicile during the relevant 180 days. For example, a medical examiner's certificate[5] for Matthew dated January 29, 2015, lists his address as Surrey[6], North Dakota. Ex. 101. A quarterly prescription drug summary issued by Debtors' health insurer on April 15, 2015, indicates a Surrey, North Dakota address. *Id*. On March 28, 2015, records indicate that Jessie held a North Dakota drivers license listing a Surrey, North Dakota home address. *Id*. The evidence also includes a pay statement for Jessie showing she worked 15.70 hours during a single day on May 6, 2015, at a firm called Swarts &

---

[5] The Court surmises this is a necessary requirement to maintain a commercial driver's license.

[6] Surrey is where Debtors' mailbox was located when they lived at the Rice Lake address.

MEMORANDUM OF DECISION – 11

Swarts in Las Vegas. *Id*. That pay statement shows Jessie's address as the Lake Windemere house. Debtors filed a state income tax return in North Dakota in 2015, Ex. 206-1, as well as a federal return that year, Ex. 205. Both listed Rigby, Idaho as their address. All other documentary exhibits contain dates outside the relevant time period.

At the § 341(a) meeting of creditors in the bankruptcy case, Jessie testified that Matthew has always been an Idaho resident, while she worked mostly in North Dakota. Debtors' schedules represent that they left Idaho in 2013, but their tax returns indicate they did not. Jessie testified at the hearing that Debtors have not been Idaho residents since they were married. At the § 341(a) meeting, Jessie testified that most of their possessions were located in Idaho after they moved to Nevada, but at the hearing, she testified that most of their possessions went with them to Las Vegas, while their business assets and larger property items that would not fit in the Las Vegas home were moved back to Idaho from North Dakota. As can be seen, the testimony and evidence is mixed concerning where Debtors were domiciled during 2015.

MEMORANDUM OF DECISION – 12

Trustee contends that Idaho exemptions apply based on Debtors' representations in their sworn schedules. Debtors contend, based on their SOFA, that Nevada exemptions should apply because they listed their residence in Las Vegas for the entire 180-day period from January 26 - July 24, 2015. However, Jessie's testimony contradicts this. She testified that Debtors lived mostly in North Dakota during that time, while they were trying to decide whether to permanently move to Nevada. They made that decision, and relocated, in February 2016. While they were renting the Las Vegas home, beginning on April 28, 2014, there is nothing in the record to either contradict or further refine Jessie's testimony that they lived in both states, but "mostly" in North Dakota during the relevant period. While, like the schedules, the SOFA filed by Debtors in their bankruptcy case is a statement made under penalty of perjury, Jessie's testimony indicates that the dates and residences listed in the SOFA are incomplete. For example, the Minot residence is not listed in the SOFA at all.

On this conflicting record, the Court finds that Debtors were

MEMORANDUM OF DECISION – 13

domiciled a majority of the time between January 26, 2015 and July 24, 2015 in North Dakota. During this time, Debtors were physically present there, and the evidence shows they intended to reside in North Dakota. Only later, Debtors established a domicile in Nevada by changing their permanent presence coupled with the intent to remain there.

Because North Dakota was their domicile, its exemption law applies in Debtors' bankruptcy case. Like Idaho, North Dakota has opted out of the federal bankruptcy exemptions. N.D. Cent. Code § 28-22-17 (providing that "residents of this state are not entitled to the federal exemptions provided in section 522(d) of the [Code]. The residents of this state are limited to claiming those exemptions allowable by North Dakota law."). In addition, North Dakota law limits access by nonresidents to only specified "absolute" exemptions. N.D. Cent. Code § 28-22-15(4) ("Only absolute exemptions may be allowed against process . . . (4) [a]gainst a nonresident[.]"). Because Debtors did not reside in North Dakota at the time they filed their bankruptcy petition, Debtors are limited to the "absolute" exemptions in N.D. Cent. Code § 28-22-02.

MEMORANDUM OF DECISION – 14

The "hanging paragraph" following § 522(b)(3)(C) provides that "[i]f the effect of the domiciliary requirement under subparagraph (A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d)." This Court has interpreted the hanging paragraph strictly, such that if a debtor has access to "any" exemption, then the resort to the federal exemptions is not employed. *In re Wilson*, 2015 WL 1850919 at *4 (Bankr. D. Idaho, Jan. 13, 2015) ("[s]o long as debtors can receive some exemptions under the applicable state law, there is no reason for recourse to § 522(d) federal exemptions as a fallback under § 522(b)(3)'s hanging paragraph."); *In re Katseanes*, 7.4 I.B.C.R. 79, 80 (Bankr. D. Idaho 2007) ("the Utah exemption statutes are applicable in Debtors' case, even if they do not benefit from all of the various exemptions provided under that State's laws.").

Here, while the list of exempt property is limited in the statutes, it appears to the Court that Debtors are entitled to claim certain "absolute" exemptions under North Dakota law. Because of this, Debtors can not rely upon the hanging paragraph in § 522(b)(3) to claim the federal exemptions

MEMORANDUM OF DECISION – 15

in § 522(d).

*Conclusion*

Debtors are not entitled to claim the federal exemptions in this bankruptcy case. While they were domiciled in several states during the 730 days preceding the filing of their petition, during the relevant 180-day period between January 26, 2015 and July 24, 2015, Debtors were domiciled in North Dakota. That State's laws control Debtors' exemption rights. While those exemptions are limited because Debtors are nonresidents, the statutes would appear to provide some exemptions to Debtors. Consequently, Debtors may not invoke the hanging paragraph in § 522(b)(3) to claim the federal exemptions.

///

MEMORANDUM OF DECISION – 16

Trustee's objection to Debtors' claim of exemptions will be sustained and their claim of exemptions will be disallowed. A separate order will be entered.

Dated: January 10, 2018

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 17