# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

|  |  |
|---|---|
| In Re:<br><br>**Matthew D. Rodenbough and Jessie J. Rodenbough,**<br><br>**Debtors.** | **Bankruptcy Case No. 17-40658-JMM** |

### *Introduction*

Before the Court is a motion for turnover of attorney's fees filed by chapter 7[1] Trustee R. Sam Hopkins ("Trustee").  Dkt. No. 86.  Trustee asks this Court to order the turnover of $3,595 of the pre-petition attorney's fees paid by Matthew D. Rodenbough and Jessie J. Rodenbough ("Debtors") to Debtors' bankruptcy counsel in this case, Avery Law ("Counsel").  *Id.*  Counsel objected to the motion.  Dkt. No. 91.  The Court heard oral argument on the matter on August 28, 2018, and thereafter took the motion under advisement.  Dkt. No. 104.[2]

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86.

[2] After the matter was under advisement, Trustee filed a motion to reopen the briefing on September 14, 2018, and set that motion for a hearing.  Dkt. Nos. 110, 111.  Thereafter, on September 28, 2018, Trustee withdrew the motion and vacated the hearing. Dkt. No. 113.

MEMORANDUM OF DECISION     1

The Court has considered the briefing, exhibits, testimony, and oral argument presented, as well as the applicable law, and now issues the following decision which resolves the motion. Rules 7052; 9014.

### *Facts*

### A. *Pre-Hearing Proceedings*

Debtors filed a chapter 7 bankruptcy petition on July 24, 2017. Dkt. No. 1. They retained Counsel to represent them in their bankruptcy pursuant to a document titled "Rights and Responsibilities Agreement Between Chapter 7 Debtors and their Attorneys" ("the Contract") signed on June 26, 2017. Exh. 200. On July 24, 2017, Counsel filed a disclosure of its compensation ("Disclosure") as required by § 329(a) and Rule 2016(b). Exh. 201; Dkt. No. 5.

By any measure, the parties' agreement regarding attorney's fees in this case is unclear. To begin, the "Attorney Fees & Costs Options" section of the Contract shows a fee amount of $1,200 that was crossed out and replaced by a hand-written entry indicating Debtors would be expected to pay "$3,500 each" for "Fees." Exh. 200 at 4. The Contract also lists a "Filing Cost" of $335 and a "Credit Report" fee of $70 per couple. *Id.* The total at the bottom of the "Fees and Costs with Discount" column shows total charges of $1,605 for the couple, but that figure is presumptively incorrect because it was not lined out and corrected so as to be consistent with the "Fees" entry mentioned above. *Id.*

MEMORANDUM OF DECISION    2

Next, the Contract includes an incomplete provision that explains "[f]or such services, as set forth above, provided before the first meeting of creditors, the attorney will be paid a fixed fee of $_____ (exclusive of court filing fees)." *Id.* The amount is left blank. *Id.* The Contract also provides that "[t]he parties agree any work required after the first Meeting of Creditors and by adversary complaints shall be billed attorney's regular hourly rate of $250 per hour, excepting some post-hearing work is billed at standard fixed rates." *Id.*

Separately from the Contract, in their bankruptcy petition, Debtors' Statement of Financial Affairs ("SOFA") shows Debtors paid Counsel $11,000 sometime in July 2017. Dkt. No. 1 at 52. Counsel's Disclosure of July 24, 2017, reflects that it was paid and received $10,595 for legal services and that a $335 filing fee was paid to the court.[3] Dkt. No. 5. In contrast to the Contract, which indicates that adversary proceedings will be billed separately at the hourly rate of $250, Counsel's Disclosure indicates that the $10,595 fee for legal services includes, *inter alia*, representation of the Debtors in an "Adversary Proceeding with Tesha Fredricks/Running Horse." *Id.*

On May 2, 2018, Trustee, citing his duty to collect the property of the estate under § 704(a)(1),[4] filed this motion for turnover of attorney's fees and a memorandum

---

[3] The $70 difference between the $11,000 paid and the $10,930 paid for legal services and the filing fee is accounted for by the $70 credit report fee for a couple mentioned in the Contract.

[4] Section 704(a)(1) provides that "[t]he trustee shall – (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best

MEMORANDUM OF DECISION    3

supporting his position that Counsel should disgorge $3,595 in fees that were not earned

as of the date of the petition.  Dkt. Nos. 86, 87.  On July 6, 2018, Counsel objected to the

motion, arguing the fee was an advance payment retainer that had been earned in full as

of the date of the filing of Debtors' bankruptcy petition.  Dkt. No. 91.  After an initial

hearing on July 17, 2018, the parties were instructed to submit further briefing in advance

of a final hearing on the motion on August 28, 2018.  Dkt. No. 93.

    *B.*  August 28, 2018, Hearing

    At the hearing on the motion on August 28, 2018, the Court admitted the Contract

(Exh. 200), the Disclosure (Exh. 201), and Counsel's "Account Billing" (Exh. 100), into

evidence.  Dkt. No. 104.  Trustee called one of the joint debtors, Jessie J. Rodenbough

("Rodenbough"), to testify as a witness.  *Id.*

    With respect to the Contract, Rodenbough testified that prior to the first in-person

meeting between Debtors and Counsel on June 26, 2017, she talked on the phone with

one of Counsel's attorneys, Mr. John Avery.  Rodenbough said that, based on that phone

conversation, she believed Mr. Avery prepared the Contract in advance of Debtors' first

meeting with Counsel, crossing out the amount of $1,200 for "Fees" and replacing it with

the entry of "$3,500 each."  She explained that Debtors signed the Contract during their

meeting with Mr. Avery on June 26, 2017, and that she was not aware of any other

written agreements between Counsel and Debtors.

interests of parties in interest[.]"

MEMORANDUM OF DECISION    4

Rodenbough recalled that, after the initial meeting with Mr. Avery, Debtors had a second meeting with one of Counsel's other attorneys, Mr. Ryan Farnsworth. During the second meeting, Rodenbough said Debtors told Mr. Farnsworth in detail about their own bankruptcy issues, as well as the issues faced by two other entities owned by the Debtors: Rodenbough Trucking and Excavating ("RTE") and Unleashed Performance Labs ("UPL"). Based on that conversation, Debtors decided to file a joint bankruptcy petition, but not to file for RTE and UPL.

Rodenbough further testified that, based on Debtors' subsequent conversation with Mr. Farnsworth, the complexity and extent of the bankruptcy issues involved in their case was fully revealed, and Debtors and Mr. Farnsworth orally agreed to a "different plan" with respect to the representation and the attorney's fees to be paid in the case. Under the terms of this subsequent oral modification ("Oral Modification"), Debtors would make a one-time pre-petition payment of $11,000 to Counsel for "everything they would need to get themselves through the whole bankruptcy process," including an anticipated adversary proceeding with Running Horse, LLC.

Rodenbough explained that Debtors paid $11,000 to Counsel with the understanding that it was a flat fee that would not vary even if RTE or UPL later needed Counsel's representation in separate bankruptcies. She said Debtors believed that they would not be entitled to any refund of the flat fee and that they would not be billed any additional amounts for services rendered through the conclusion of their bankruptcy case.

MEMORANDUM OF DECISION    5

Rodenbough confirmed that, ultimately, neither RTE nor UPL had to file for bankruptcy, but that Counsel successfully resolved the legal issues related to those entities in the settlement executed in the adversary proceeding between Debtors and Running Horse, LLC.[5]

While Rodenbough provided extensive information on the terms of Debtors' Oral Modification of the Contract with Counsel, she was less clear about what the phrase "$3,500 each" might have meant.  When questioned as to whether "$3,500 each" could have meant $3,500 per entity, she indicated that it could have, but did not express certainty on this point.  RTE and UPL are not mentioned anywhere in the Contract or the Disclosure.  Exhs. 200, 201.

The Oral Modification to the Contract that Rodenbough described at the hearing was never reduced to writing.  Rodenbough mentioned that she was not familiar with legal terminology, but that she felt the Contract "probably should have been amended" in light of the substance of the conversation between Debtors and Mr. Farnsworth.

Though Counsel never properly amended the Contract, Rodenbough reported that Debtors received the benefit of their oral bargain with Counsel.  At the time of the hearing, the Account Billing for Debtor's bankruptcy case showed a detailed ledger of $16,148 in attorney's fees and an outstanding balance of $5,148.  Exh. 100.  The Account

---

[5] The order approving the Rule 9019 settlement in *Rodenbough v. Running Horse, LLC*, #17-40658-JMM, was filed on September 17, 2018.  Adv. Dkt. No. 36.

MEMORANDUM OF DECISION    6

Billing, on its face, suggests Debtors incurred more than $11,000 in fees according to the hourly rate described in the Contract. However, Rodenbough testified that she understood Debtors would not, in fact, be held responsible for the balance because the $11,000 flat-fee, pre-petition payment had fully satisfied Debtors' obligation to Counsel for attorney's fees in Debtors' bankruptcy case, including the associated adversary proceeding with Running Horse, LLC. At the conclusion of Rodenbough's testimony, no further witnesses were called, the parties made closing statements, and this Court took the matter under advisement.

## Analysis and Disposition

### A. Fee Retainers as Property of the Estate

Under § 541(a)(1), commencement of a bankruptcy case creates an estate comprised of "all legal or equitable interests of the debtor in property" as of the date of filing. The scope of § 541 is intended to be broad. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983). "While state law determines the nature and extent of a debtor's interest in property, once that determination is made, federal bankruptcy law dictates if the interest is property of the estate." *First Fed. Bank of Cal. v. Cogar (In re Cogar)*, 210 B.R. 803, 809 (9th Cir. BAP 1997) (citing *In re King*, 961 F.2d 1423, 1426 (9th Cir. 1992)). All property of the estate must be turned over to the trustee. § 542.

MEMORANDUM OF DECISION   7

To determine a Debtor's interest in a retainer "at the time of filing, and thus the estate's interest, the Court must first determine the nature of the retainer at issue." *In re Blackburn*, 448 B.R. 28, 35 (Bankr. D. Idaho 2011). In general, there are three types of retainers: (1) classic or true retainers,[6] (2) security retainers, and (3) advance payment retainers. *Id.* (citing *Rus, Miliband & Smith, APC v. Yoo (In re Dick Cepek, Inc.)*, 339 B.R. 730, 736 (9th Cir. BAP 2006)). "[I]t is the substance of a retainer, and not its name, that determines its nature and legal attributes." *In re Werry*, No. 11-01710, 2011 WL 3800016, at *6 (Bankr. D. Idaho 2011) (citing *In re C & P Transport, Inc.*, 94 B.R. 682, 687 (Bankr. E.D. Cal. 1988)).

## 1. Security Retainers

A security retainer is held to secure payment of fees for legal services the attorney will be expected to provide in the future. *Blackburn*, 448 B.R. at 35. "Such funds do not constitute present payment for future services, but, rather, remain property of the client until the attorney applies charges for services rendered against the retainer. Any funds not earned by the attorney are returned to the client." *Id.* (citing *Dick Cepek*, 339 B.R. at 736). This Court has held that security retainers, unearned as of the petition date, are property of the bankruptcy estate. *Id.* (citing *In re Dearborn Constr., Inc.*, 03.1 I.B.C.R. 17, 20 (Bankr. D. Idaho 2003)). Under a security retainer, a debtor's attorney "may not

---

[6] Classic retainers "refer to the payment of a sum of money to secure availability over a period of time" and are not relevant in this case. *Rus, Miliband & Smith, APC v. Yoo (In re Dick Cepek, Inc.)*, 339 B.R. 730, 736 n.5 (9th Cir. BAP 2006) (quoting *In re Montgomery Drilling Co.*, 121 B.R. 32, 37 (Bankr. E.D. Cal. 1990)).

MEMORANDUM OF DECISION    8

recover compensation from the bankruptcy estate for services rendered in a chapter 7 case unless that attorney has been employed by the trustee and such employment approved by the court pursuant to § 327." *Blackburn*, 448 B.R. at 37 (citing *Lamie v. United States Trustee*, 540 U.S. 526, 538–39 (2004)).

### 2. Advance Payment Retainers

Alternatively, an advance payment retainer, or flat fee retainer, exists where "an attorney receives payment in exchange for certain agreed-upon, enumerated services to be performed on the debtor's behalf in the future." *Werry*, 2011 WL 3800016, at *6 (citing *In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 1000 (Bankr. N.D. Ill. 1990)); *see also* 3 COLLIER ON BANKRUPTCY ¶ 328.02[3][b][ii], at 328–11 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017) ("An example of an advance payment or fixed fee is a flat fee of $2,000 paid to the debtor's attorney for all enumerated work to be performed in the bankruptcy case.").  An attorney's services agreed to be rendered under an advance payment retainer can be the entire scope of services expected in a case or may be limited to specific tasks. *Werry*, 2011 WL 3800016, at *7. (citing *Redmond v. Lentz & Clark, P.A. (In re Wagers)*, 514 F.3d 1021, 1025 n.6 (10th Cir. 2007)).

Advance payment retainers are not property of the estate. *Blackburn*, 448 B.R at 38.  Such retainers "belong to the attorney when transferred, though the attorney is still obligated to earn the fees prepaid and refund to the client any unearned portion of the

MEMORANDUM OF DECISION      9

retainer when the attorney's representation ends." *Id.* (citing *In re For–Rose Plumbing, Inc.*, No. 98-02144, 1999 WL 33486708 at *6 (Bankr. D. Idaho 1999)). The estate's interest in an advance payment retainer is limited to an equitable accounting and a refund of any unearned portion of the fee. *Id.* Unlike a security retainer, payments to a chapter 7 debtor's attorney from an advance payment retainer are permissible because the retainer funds are not property of the estate and no court approval under § 330 is required. *Id.* (citing *Morse v. Ropes & Gray, LLP (In re CK Liquidation Corp.)*, 343 B.R. at 383–84 (D. Mass. 2016)).

## A. The Parol Evidence Rule

At the August 28, 2018, hearing the parties and the Court discussed the fact that elements of the Contract are ambiguous. To determine the meaning of an ambiguous provision in an agreement, the Court may consider extrinsic evidence subject to the limitations of the parol evidence rule. *See, e.g.*, *In re Gables Mgmt.*, 473 B.R. 352, 358 (Bankr. D. Idaho 2012). Idaho's version of the parol evidence rule has previously been summarized by this Court:

> When parties reduce their agreement to a writing, and intend that document to be a final statement of the terms of their agreement, the parol evidence rule provides that evidence of any prior or contemporaneous agreements or understandings between the parties which relate to the same subject matter is not admissible to vary, contradict, or enlarge the terms of the written contract. Parol evidence may, however, be considered to aid the court in determining the intent of the drafter of a document if an ambiguity exists. However, "if a contract's terms are clear and unambiguous, the contract's

MEMORANDUM OF DECISION    10

meaning and legal effect are questions of law to be determined from the
plain meaning of its own words."

Id. (quoting *Bream v. Benscoter*, 79 P.3d 723, 726 (Idaho 2003)).

While the rule generally bars evidence of prior or contemporaneous agreements relating

to the same subject matter, the Idaho Supreme Court has explained that:

[T]he parol evidence rule does not apply so as to prohibit the establishment
by parol of an agreement between the parties to a writing, entered into
subsequent to the time when the written instrument was executed,
notwithstanding such agreement may have the effect of adding to, changing,
modifying, or even altogether abrogating the contract of the parties as
evidenced by the writing.

Brewer v. Pitkin, 577 P.2d 1162, 1164 (Idaho 1978) (citing *Brooks v. Beach*, 294 P. 505,

506 (1930)).  Thus, the parol evidence rule does not prevent this Court from considering

the substance of subsequent oral modifications to a contract as agreed to by the parties.

B.  Trustee's Motion for Turnover

1.  Trustee's Argument

Pursuant to his duties under § 704(a)(1), Trustee brings the instant motion for

turnover of attorney's fees.  Trustee asks for an order directing Counsel to return the

MEMORANDUM OF DECISION     11

portion of the $11,000 paid to Counsel by the Debtors that this Court finds was a security retainer, and thus, property of the bankruptcy estate.

Trustee argues that Counsel should turn over $3,595 in attorney's fees because that portion of Debtors' $11,000 payment was unearned as of the petition date, and thus constituted a security retainer that was property of the estate.  Dkt. No. 87 at 2, 4.  Trustee does not argue that the entire fee was a security retainer, instead conceding that a "portion of the $11,000 payment [was] an advance payment retainer" that should not be considered part of the bankruptcy estate.  *Id.* at 4.

Trustee explains that the Contract provides for an amount Counsel would be paid for legal services through the § 341 meeting of creditors; services for adversary proceedings would be billed separately at hourly rates.  *Id.* at 1, 4.  Trustee asserts that the amount to be paid for legal services through the § 341 meeting under the Contract is unclear.  *Id.* at 4.  In an attempt to fairly interpret the Contract's ambiguities, Trustee construes the Contract liberally to get to the amount of $3,595 by assuming a $3,500 flat fee per debtor (presumably Mr. and Mrs. Rodenbough), resulting in a total flat fee of $7,000 earned as an advance payment retainer.  *Id.* at 4.  Accounting for the $7,000 fee amount, the $335 filing fee, and the $70 credit report fee, in the Trustee's view, this leaves $3,595 in fees that should be characterized as a security retainer for post-petition services and returned to the bankruptcy estate.

MEMORANDUM OF DECISION     12

2.  Debtor's Argument

In response, Debtors argue that the entire amount of the $11,000 payment to

Counsel was an advance payment retainer representing a flat fee for all services to be

rendered throughout Debtors' bankruptcy, including the anticipated adversary with

Running Horse, LLC and the possible representation of RTE and UPL.  In support of this

position, Debtors rely on Rodenbough's testimony, the contents of the Disclosure, and

their version of the Contract's intended meaning.

The parties agree that $335 of the $11,000 is attributable to the Chapter 7 filing fee

and $70 is a fee for a joint credit report; this leaves $10,595 to be accounted for.  In their

briefing and oral arguments, Debtors offered two explanations for why the $11,000

should be considered an advance payment retainer.

First, Debtors contend that the Contract's "$3,500 each" language was intended to

convey separate flat fees of $3,500 each to represent (1) the joint Debtors, (2) RTE, and

(3) UPL, for a total flat fee of $10,500 that was earned when paid as an advance payment

retainer.[7]  In support of this reading of the Contract, Debtors offer the contents of the

Disclosure, which shows a fee amount of $10,595 for "legal service[s] for all aspects of

the bankruptcy case, including . . . [an] adversary proceeding with Tesha Fredericks /

---

[7] Nothing in the evidentiary record or oral arguments clarified what might account for the $95
discrepancy between the amount of $10,595 in the Disclosure and the amount of $10,500 arrived at by
charging $3,500 for each of the three entities.  It is unclear whether this rough math created the basis for a
later understanding of an $11,000 flat fee payment or whether the notion of $3,500 per entity had any
bearing on how the parties arrived at a payment of $11,000 at all.

MEMORANDUM OF DECISION      13

Running Horse." Exh. 201. Additionally, Debtors direct the Court to the testimony of

Rodenbough on the subject of what "$3,500 each" may have meant. Rodenbough

testified that this "$3,500 per entity" reading of the Contract "could" have been what the

parties intended.

Second, Debtors suggest that the Contract's terms were changed by the Oral

Modification reached by the parties on the same day the Contract was executed. Under

this theory, Debtors concede that the Contract's terms are unclear because it was signed

before Debtors and Counsel had a full understanding of the legal issues involved in

Debtors' bankruptcy case. Debtors suggest that because the Contract's terms are unclear,

this Court must consider Rodenbough's testimony to determine the intent of the parties.

Rodenbough testified that, subsequent to the execution of the Contract, the parties

agreed to the Oral Modification under which Counsel would represent Debtors in all

matters relating to the bankruptcy case, including the anticipated adversary with Running

Horse and any potential bankruptcy issues involving RTE and UPL, in exchange for a

one-time, pre-petition payment of $11,000 by Debtors. Rodenbough also explained she

understood Debtors would not receive any refund from Counsel, nor would they incur any

further attorney's fees related to the bankruptcy case above and beyond the $11,000 fee

they had already paid.

MEMORANDUM OF DECISION     14

Under either theory, it is clear enough that Debtors implicitly ask this Court to consider the Oral Modification to determine the terms of the Contract to pay attorney's fees in this case. At bottom, Debtors suggest that Rodenbough's testimony on the substance of the Contract, combined with the contents of the Disclosure, should lead this Court to conclude that the entire $11,000 payment was an advance payment retainer and was not property of the estate at the time of Debtors' bankruptcy filing.

### 3. Debtors and Counsel Orally Modified the Agreement After Its Execution

Based on the foregoing arguments and the limited record before it, the Court must decide whether any part of the $11,000 payment was a security retainer, and thus property of the estate at the time of filing. Ultimately, this issue must be decided based on the meaning of the Contract in consideration of the parol evidence rule and its exceptions.

First, the Court looks to the four corners of the Contract to determine what, if anything, the Contract establishes in regard to the attorney's fees paid by the Debtors in this case. On its face, the Contract is an agreement between Counsel and the Debtors under which Counsel agreed to provide legal services up through the § 341 meeting of creditors in exchange for Debtors' payment of a flat fee. The Contract indicates that services beyond the § 341 meeting, such as representation in adversary proceedings, will be billed at hourly rates. However, as discussed at length above, the Contract is unclear regarding the amount of the flat fee Debtors agreed to pay.

MEMORANDUM OF DECISION     15

As the Idaho Supreme Court explained in *Brewer*, the parol evidence rule bars evidence of discussions and agreements that preceded, or were made contemporaneously with, an executed written agreement, but it does not bar evidence of subsequent oral modifications to a contract, even where those modifications add to, change, modify, or abrogate the contract as written.  Here, Rodenbough's testimony establishes that Debtors signed the Contract during a meeting with Mr. Avery on June 26, 2017.  After signing the Contract, Rodenbough explained that Debtors had a second meeting that same day with Mr. Farnsworth during which Debtors and Counsel agreed to the Oral Modification.  This Court may consider Rodenbough's testimony because it concerns a subsequent oral modification to the Contract, and it is not barred by the parol evidence rule.

Rodenbough's testimony on the Oral Modification varies from the Contract's written terms.  For example, the Contract calls for Debtors to pay a flat fee, the amount of which is unclear, for legal services through the § 341 meeting; fees for legal services rendered after the § 341 meeting were to be billed at hourly rates.  However, under the terms of the Oral Modification described by Rodenbough, Debtors agreed to make a one-time, pre-petition payment of $11,000 to Counsel in exchange for Counsel's commitment to provide Debtors with "everything they would need to get themselves [and their two entities] through the whole bankruptcy process."  Rodenbough explained that Debtors and Counsel agreed the flat fee would cover the costs of representation for all bankruptcy services related to Debtors' case, including an anticipated adversary proceeding with

MEMORANDUM OF DECISION    16

Tesha Fredericks/Running Horse and any other services required to resolve bankruptcy-related issues related to RTE and UPL.  Continuing, Rodenbough said that Debtors neither expected any amount of the flat fee to be refunded, nor expected to be billed for any additional legal services by Counsel in the future, regardless of the actual hours worked by Counsel on the bankruptcy case.

Based on Rodenbough's testimony, the Court determines that Debtors and Counsel orally modified the terms of the Contract.  Under the terms of the Oral Modification, Debtors agreed to pay Counsel $11,000 prior to the bankruptcy filing in exchange for Counsel's commitment to represent them in all aspects of their bankruptcy, including adversary proceedings, come what may.  The terms of the Oral Modification are consistent with the amount that Debtors actually paid to Counsel and are consistent with the terms of Counsel's Disclosure.

Furthermore, it appears Debtors and Counsel each received the benefit of their bargain with one another.  Counsel was paid a flat fee of $11,000 to handle all of Debtors' bankruptcy-related issues and successfully resolved the Running Horse adversary proceeding by way of a settlement.  That same settlement also resolved the legal issues related to RTE and UPL, thus helping Debtors achieve their broader goals with respect to the representation.

MEMORANDUM OF DECISION     17

While the Court is concerned that, at the time of the hearing, Counsel's Account Billing reflected a balance of $5,148 on Debtors' account, Rodenbough testified she was confident that Counsel will not, in fact, pursue collection of that amount from Debtors in the future. The Court accepts this testimony as fact and expects Counsel to honor the terms of the Oral Modification by expeditiously updating Debtors' account records to reflect a balance due of $0.

### 4. The Oral Modification Created an Advance Payment Retainer

Based on the terms of the Oral Modification of the Contract, the Court finds that the parties agreed to an $11,000 advance payment retainer. Rodenbough's testimony confirmed that Debtors and Counsel understood the $11,000 payment to be a one-time, flat fee payment for all services required in the bankruptcy case, including representation in adversary proceedings. Taking this to be true, the full amount of the $11,000 retainer was earned when paid. Rodenbough testified that Debtors did not expect any refund, did not expect any further billings from Counsel, and that the additional hourly billing rates for adversary proceedings mentioned in the Contract were not applicable to Debtors' bankruptcy case. No party to this motion proffered any evidence on whether the $11,000 was held in a client trust account or in one of Counsel's general bank accounts. In the absence of such evidence, the Court is left only with Rodenbough's testimony on the Oral Modification of the Contract, and the contents of the Disclosure, to aid it in deciding what type of retainer Counsel and Debtors agreed to in this case. Based on the limited record

MEMORANDUM OF DECISION     18

before it, the Court finds that the $11,000 case bears the hallmarks of an advance payment retainer.

Since the Court finds that the $11,000 payment created an advance payment retainer, such retainer is not property of the estate.  In this case, Trustee did not challenge the reasonableness of Counsel's fees.  This Court also declines to conduct a *sua sponte* review of the reasonableness of the fees.[8]  As such, this Court finds that Counsel may retain the entirety of the $11,000 payment and does not have to turn over any portion of the payment to the bankruptcy estate.

Even so, this Court notes its reluctance to reward Counsel for its failure to properly reduce the Oral Modification of the Contract to writing.  After Debtors and Mr. Farnsworth clarified the scope of the legal services Debtors would actually need in the bankruptcy case, and the price they agreed to pay for such services, Counsel should have amended the Contract.  Rodenbough, a non-attorney, even testified that the Contract "probably should have been amended."  Counsel's failure to take a few minutes to amend the Contract needlessly resulted in the need for Trustee to bring, and for this Court to resolve, the instant motion.

Further, Counsel was lucky here that the Debtors' obligations were not consumer debts.  Had they been consumer debts, Counsel's haphazard treatment of the Contract

---

[8] A cursory review of Counsel's Billing Statement shows that the value of services provided in this case exceeded the $11,000 paid by Debtors.

MEMORANDUM OF DECISION     19

would have led it headlong into the requirements imposed on debt relief agencies by

§§ 528(a) and 526(c).[9]  From the Court's review of the evidence presented, it is of the

opinion that the result here was more the consequence of luck rather than the detailed

plan and analysis of Counsel when obtaining the $11,000 payment.  Thus, the result here

would clearly be changed had the nature of Debtors' debts been different.

Lastly, the Court takes care to point out that the ruling in this case is strictly

limited to its facts.  Neither party adduced evidence of where the fee was held after it was

paid: i.e., in a client trust account or some other type of account.  There was no dispute

between Debtors and Counsel about the details of the Oral Modification to the Contract.

Trustee's efforts to advocate on behalf of his own motion were tepid and might better be

characterized as a well-intentioned effort to conduct due diligence on the nature of the

Contract in light of its unclear terms.

It is also noteworthy that Trustee did not challenge the reasonableness of the fees

in this case.  Under § 329, the Court may elect to review the reasonableness of fees paid

under an advance payment retainer at any time.  The Court also notes that even in cases

such as this, where an advance payment retainer is recognized, debtors are still entitled to

an equitable accounting and a refund of any unearned portion of the fee.

---

[9] Among other things, § 528 requires bankruptcy attorneys to execute clear and conspicuous written fee agreements.  § 528(a)(1).  § 526(c)(1) explains that contracts for bankruptcy services that do not meet the material requirements of §§ 526, 527, and 528 "shall be void and may not be enforced by any Federal or State court or any other person . . . [.]"  Congress enacted these statutory sections to provide certain protections for an "assisted person," which is defined by § 101(3) as "any person whose debts consist primarily of consumer debts and whose nonexempt property is less than $192,450."

MEMORANDUM OF DECISION     20

*Conclusion*

Based on this record, the Court finds that Debtors' $11,000 pre-petition payment to Counsel created an advance payment retainer, which was not property of the estate. Therefore, Trustee's motion to turnover estate property is denied.  A separate order will be entered.

DATED:  April 19, 2018

_____
JOSEPH M. MEIER
U. S. BANKRUPTCY JUDGE